[661 NYS2d 659]

Sonya Perez et al., Appellants, v Mini-Max Stores, Inc., et al., Respondents.

Second Department, August 18, 1997

## APPEARANCES OF COUNSEL

*Ready & Pontisakos,* Garden City *(Kenneth J. Ready, John D. Pontisakos, Steven T. Lane* and *Leonora Bloom* of counsel), for appellants.

*Maloof, Lebowitz, Connahan & Oleske,* New York City *(Michelle Mordkoff* of counsel), for Mini-Max Stores, Inc. and another, respondents.

*Quirk & Bakalor, P. C.,* New York City *(Richard Bakalor* of counsel), for Union Underwear Company, Inc. and another, respondents.

### OPINION OF THE COURT

Per Curiam.

On December 5, 1988, the five-year-old plaintiff was severely burned when he allegedly dropped a cigarette lighter he was playing with onto his thermal undershirt, causing it to catch on fire. The shirt was manufactured by defendant Union Underwear Company, Inc., and/or Fruit of the Loom, Inc. (hereinafter collectively Union), and was sold at retail to the infant plaintiff's mother by the defendant Mini-Max Stores, Inc., and/or Alpine Discount Stores, Inc. (hereinafter collectively Mini-Max). Subsequently, the infant plaintiff and his mother commenced the instant action against the defendants to recover damages based on claims of negligence, strict liability, and breach of warranty. After issue was joined, Union and Mini-Max separately moved to amend their respective answers to assert as a defense that the compliance by the manufacturer with the Federal Flammable Fabrics Act absolved them, as a matter of law, from any liability *(see,* 15 USC § 1191 *et seq.* [Flammable Fabrics Act]). The plaintiffs cross-moved for a declaration that compliance with Federal law did not preempt their claims. By stipulation of the parties, these motions were converted into a motion by the defendants for summary judgment dismissing the complaint on the basis of compliance with the Federal statute. It is undisputed that the fabric complied with the standards set forth in the applicable Federal flammability statute. The Supreme Court granted the motion and dismissed the complaint. We disagree and reverse.

"The Supremacy Clause of the United States Constitution, directing that Federal laws 'shall be the supreme Law of the Land * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding' (US Const, art VI, cl [2]), thereby vests in Congress the power to supersede not only State statutory or regulatory law but common law as well * * *. The preemption question is ultimately one of congressional intent * * *. As recapitulated most recently in *Barnett Bank* [517 US —], congressional preemptive intent may be

shown from express language in the Federal statute; it may also be established implicitly because the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter ('field preemption'), or because State law conflicts with the Federal law. Implied conflict preemption may be found when it is impossible for one to act in compliance with both the Federal and State laws, or when 'the state law * * * "stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" ' " *(Guice v Charles Schwab & Co.,* 89 NY2d 31, 39).

The Flammable Fabrics Act of 1953 (15 USC §§ 1191-1204) prohibits the sale and distribution of fabrics intended for use in clothing which do not comply with the threshold standards contained in the Act (15 USC § 1192). The statute sets forth as a test an industry-developed flammability standard known as Commercial Standard (CS) 191-53, to determine whether a fabric is dangerous when used in clothing (16 CFR part 1610). The standard fixes a minimum resistance-to-flammability level. If the fabric passes the test, it may be used in wearing apparel. CS 191-53 continues to be the Federal standard.

No preemptive language was contained in the original statute. In 1967 the statute was amended in order "to increase the protection afforded consumers against injurious flammable fabrics" (113 Cong Rec 20322). The 1967 amendment added a preemptive provision, stating that "[t]his Act is intended to supersede any law of any State or political subdivision thereof inconsistent with its provisions" (Pub L 90-189, § 10, adding Flammable Fabrics Act [67 US Stat 111] § 16, 81 US Stat 568, 573-574).

In 1976 the Act was again amended and the 1967 preemption language was replaced with the following provision: "(a) Except as provided in subsections (b) and (c), whenever a flammability standard or other regulation for a fabric * * * is in effect under this Act, no State or political subdivision of a State may establish or continue in effect a flammability standard or other regulation for such fabric * * * if the standard or other regulation is designed to protect against the same risk of occurrence of fire with respect to which the standard or other regulation under this Act is in effect unless the State or political subdivision standard or other regulation is identical to the Federal standard or other regulation" (15 USC § 1203 [a]). The 1976 amendment replaced the term "law" contained in the 1967 amendment with "flammability standard or other

regulation" which suggests, in our view, that Congress intended to preempt inconsistent State statutory enactments rather than all State laws and, therefore, we find that Congress did not intend to preempt State common-law remedies *(cf., Gryc v Dayton-Hudson Corp., 297 NW2d 727, 736 [Minn])*.

It is for this reason that we conclude that this case is distinguishable from *Guice v Charles Schwab & Co.* (89 NY2d 31, *supra)*. In *Guice,* the issue was whether class actions by former retail customers of the defendant stockbrokers with regard to their disclosure obligations on "order flow payments" alleging violation of common-law agency principles were preempted by the 1975 amendments to the Securities Exchange Act and the implementing regulations of the Securities and Exchange Commission (SEC). After analysis of the legislative history of the amendments to the Securities Exchange Act and the history of the implementing regulations, the Court of Appeals concluded that: "[P]ermitting the courts of each State to enforce the foregoing common-law agency standards of disclosure on the practice of order flow payments in civil damage actions would unavoidably result in serious interference with the 'accomplishment and execution of the full purposes and objectives of Congress' *(Hines v Davidowitz, supra,* 312 US, at 67), in enacting the 1975 amendments, and would directly conflict with SEC regulations limiting the disclosure requirements regarding receipt of order flow payments" *(Guice v Charles Schwab & Co., supra,* at 45). In the instant case, the legislative history suggests that Congress intended to preempt inconsistent State statutory enactments rather than State regulation through the imposition of common-law liability and, therefore, we find that there has been no interference with congressional objectives.

There is yet another ground to rule against preemption. It should be emphasized that the current flammability standard, CS 191-53, is an industry-devised standard, not one adopted by the Federal agency after meaningful inquiry. In *Wilson v Bradlees of New England* (96 F3d 552 [1st Cir 1996]), the infant plaintiff suffered severe burns after her sweatshirt and T-shirt caught fire. Her mother brought suit against the manufacturer, the wholesaler, the printer, and the retailer. The defendants asserted that the Flammable Fabrics Act preempted the plaintiffs' claims. The Court of Appeals for the First Circuit concluded that the statute did not preempt the plaintiffs' common-law claims, determining that a plaintiff should not be precluded from showing that industry should have done more

under certain conditions, drawing a critical distinction between an independent Federal agency judgment and an industry-developed standard.

In *Medtronic, Inc. v Lohr* (518 US —, 116 S Ct 2240), the Supreme Court was presented with the question of whether the Medical Device Amendments of 1976 preempted a State common-law negligence action against the manufacturer of an allegedly defective medical device. There, the Supreme Court read the term "requirement" in the counterpart provision of the Medical Device Amendments of 1976 (21 USC § 360k [a]) to embrace common-law rules in determining whether that statute preempted a State common-law action against the manufacturer of an alleged defective medical device. However, the phrase "or other regulation" does not appear in the *Lohr* statute as it does in the Flammable Fabrics Act and, therefore, in our view, the case is not controlling as to the construction to be accorded the phrase "standard or other regulation" on the preemption issue.

Further, we find no implied conflict preemption as there is no evidence that the common law cannot coexist with the Federal statute *(Guice v Charles Schwab & Co.,* 89 NY2d 31, 39, *supra).* It is possible that apparel may be manufactured which burns at a slower rate than that set forth in the Flammable Fabrics Act and still be in compliance with Federal law. We conclude, therefore, that the plaintiffs' common-law claims were not preempted by Federal law *(see, Wilson v Bradlees of New England,* 96 F3d 552, *supra; Feiner v Calvin Klein, Ltd.,* 157 AD2d 501; *Miller v Lee Apparel Co.,* 19 Kan App 2d 1015, 881 P2d 576; *Ellsworth v Sherne Lingerie,* 303 Md 581, 495 A2d 348).

SULLIVAN, J. (dissenting). Inasmuch as I find that the language of the Flammable Fabrics Act (15 USC § 1191 *et seq.* [hereinafter the Act]) expressly preempts the common-law claims in this case, I would affirm the order awarding summary judgment in favor of the defendants.

It is clear that the original version of the Act, enacted in 1953, contained a specific flammability standard which remains largely unchanged today. As my colleagues in the majority correctly observe, there is no dispute that the garment at issue in this case complied with the applicable flammability standard. While the 1953 version of the Act contained no preemptive language, such language was added by a 1967 amendment for the purpose of establishing uniform flammability standards

throughout the Nation. Accordingly, as so amended, the Act stated that it was intended "to supersede any *law* of any State or political subdivision thereof *inconsistent* with its provisions" (Pub L 90-189, § 10, adding Flammable Fabrics Act [US Stat 111] § 16, 81 US Stat 568, 573-574 [emphasis supplied]). The preemptive provision was amended in 1976 to its current text, which provides in relevant part as follows: "whenever a *flammability standard or other regulation* for a * * * product is in effect under this Act, no State or political subdivision of a State may establish or continue in effect a flammability standard or other regulation for such * * * product if the standard or other regulation is designed to protect against the same risk of occurrence of fire * * * unless the State or political subdivision standard or other regulation is *identical* to the Federal standard or other regulation" (15 USC § 1203 [a] [emphasis supplied]). Hence, not only did the 1976 amendment replace the word "law" with the phrase "standard or other regulation", as noted by the majority, but it also required that any State standard or regulation would be invalid unless it was "identical" to the Federal standard or regulation. Unlike the majority, I find that the 1976 amendment broadened rather than narrowed the preemptive sweep of the Act and that the quoted provision bars not only the legislative enactment of statutes and the administrative promulgation of regulations governing flammability criteria, but the common-law claims asserted by the plaintiffs as well.

We need look no further than the decision of the United States Supreme Court in *Medtronic, Inc. v Lohr* (518 US —, 116 S Ct 2240) in determining the preemptive effect of the current version of the Act. In *Medtronic, Inc. v Lohr (supra),* the Supreme Court was required to construe a preemption provision contained in the Medical Device Amendments of 1976 (hereinafter the MDA), which provided in part:

"no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any *requirement*—

"(1) which is *different from, or in addition to,* any requirement applicable under this Act to the device" (21 USC § 360k [a] [emphasis supplied]).

In interpreting the foregoing language, a majority of the Court found that the scope of preemption would include State common-law claims, at least to the extent those common-law claims "required" medical device manufacturers to comply with common-law duties which were different from the require-

ments of the MDA. Indeed, Justice O'Connor, concurring in part and dissenting in part in an opinion in which three other Justices joined, reasoned that "state common-law damages actions operate to require manufacturers to comply with common-law duties" (Medtronic, Inc. v Lohr, supra, 518 US, at —, 116 S Ct, at 2262) and therefore that the plain language of the statute "clearly pre-empts any state common-law action that would impose a requirement different from, or in addition to, that applicable under the [Federal legislation]—just as it would pre-empt a state statute or regulation that had that effect" (Medtronic, Inc. v Lohr, supra, 518 US, at —, 116 S Ct, at 2263). Writing separately, Justice Breyer expressed his agreement with the foregoing portion of Justice O'Connor's opinion, and further observed that "[o]ne can reasonably read the word 'requirement' [in the preemption statute] as including the legal requirements that grow out of the application, in particular circumstances, of a State's tort law" (Medtronic, Inc. v Lohr, supra, 518 US, at —, 116 S Ct, at 2259).

I find no appreciable distinction in preemptive effect between the use of the term "requirement" in the MDA and the use of the word "standard" in the section of the Flammable Fabrics Act at issue here. The plaintiffs' common-law claims essentially are grounded on the premise that the garment in this case was not sufficiently resistant to fire. However, since the garment complied with the flammability standard of the Act, the plaintiffs' common-law claims constitute an attempt to impose a greater flammability standard upon the defendants than the Federal Act requires. Therefore, following the rationale of the majority in Medtronic, Inc. v Lohr (supra), those common-law claims are preempted by the plain language of the statute, which precludes the establishment of any flammability standard which is not identical to the Federal standard. Similarly, I find unpersuasive the attempt by my colleagues in the majority to distinguish Medtronic, Inc. v Lohr (supra) from this case on the basis that the preemption provision herein contains the additional language "or other regulation". While the employment by the United States Congress of the term "regulation" certainly suggests an intention to preempt affirmative State and local enactments governing flammability, it in no way detracts from the broad preemptive scope of the word "standard" which encompasses State common-law claims as well.

I have considered the plaintiffs' remaining arguments in opposition to preemption and find them to be without merit. Accordingly, I vote to affirm the order appealed from.

ROSENBLATT, J. P., O'BRIEN and McGINITY, JJ., concur in a Per Curiam opinion; SULLIVAN, J., dissents in a separate opinion

Ordered that the order is reversed, on the law, with costs, the defendants' motion is denied, and the complaint is reinstated.